WYSS, APPELLANT, *v.* WYSS, APPELLEE.

(No. 81AP-943—Decided April 1, 1982.)

*Mr. Dustin J. Redmond, Jr.,* and *Laborers' Local 423 Legal Service,* for appellant.

*Mr. David T. Bainter,* for appellee.

MOYER, J. This matter is before us on the appeal of Julia D. Wyss (Julia) from a judgment of the Domestic Relations Division of the Court of Common Pleas of Franklin County sustaining the motion of the appellee, William M. Wyss (William), for a change of custody of the parties' two minor children.

The Wysses dissolved their marriage in August 1980 by a decree that gave Julia custody of the parties' two minor children. On January 23, 1981, William filed a motion to change custody to him. Attached to the motion was an affidavit executed by Julia's brother and an affidavit executed by her father. The affidavits state that Julia has "slept with her male friend, Mike Rosser, on various occasions in an abode shared by the two minor children." The affidavits also state that Julia has no permanent address and that the children, ages eight and three years, have slept in their mother's automobile on various occasions. The affidavit of Julia's father also states that the older child has not attended school since January 12, 1981, due to a lack of a permanent address, and that Julia and Rosser have been traveling between various points in Ohio.

The trial court, on January 23, 1981, entered an *ex parte* order granting William temporary possession of the two minor children until the date of the hearing scheduled for March 31, 1981. However, a hearing was not held by a referee of the trial court until May 28, 1981.

The trial court, after overruling Julia's objections to the report of the referee, adopted the recommendation of the referee and awarded custody of the children to William with the provision that the children remain with William's parents in Bucyrus until he was able to relocate there. The appellant, Julia Wyss, raises the following four assignments of error in support of her appeal:

"1. The judgment is against the manifest weight of the evidence.

"2. The conclusions of the court below are insufficient as a matter of law.

"3. The post-decree *ex parte* temporary custody order is contrary to law.

"4. The court below committed prejudicial error in considering affidavits not in evidence."

We will dispose of the third assignment of error first. The issue raised by the third assignment of error is moot because the order of the trial court granting William temporary possession of the minor children merged with the final judgment of the trial court, and the question of whether the trial court had the authority to enter such an order is, therefore, moot at this time.

The first and second assignments of error are interrelated and are considered together. The Ohio General Assembly has established statutory guidelines to be used by the trial court in determining whether to modify a custody order. At the time of the hearing in this case, these guidelines were found in R.C. 3109.04(B) and (C).[1] It is clear from a close reading of division (B) of R.C. 3109.04 (now R.C. 3109.04[B][1]) that modification of a custody order is to be granted only where changed circumstances or circumstances not known to the trial court at the time of the original order cause the trial court to conclude that a modified custody order is in the best interest of the child.

R.C. 3109.04(B) then provides that the parent in custody shall retain custody

---

[1] R.C. 3109.04(B) was amended effective August 27, 1981, and is now designated as R.C. 3109.04(B)(1). (R.C. 3109.04[C] remained R.C. 3109.04[C].) The amendment made no substantive change in the statutory provisions at issue in this case.

unless one of the conditions set out in subdivisions (1) through (3) (now R.C. 3109.04[B][1][a], [b] and [c]) is found to exist by the trier of fact. Such a test places upon the party seeking a modification the burden of showing that (1) the custodian agrees to a change in custody, (2) the child, with the consent of the custodian, has been integrated into the family of the person seeking custody, or, (3) as under the facts of this case, the environment provided by the parent with custody significantly endangers the child's physical health or his mental, moral or emotional development. It is not sufficient for the moving party to merely show that he can provide a better environment than the environment provided by the parent with custody.

The first finding to be made by the court is whether facts that have arisen since the prior decree, or facts which were unknown to the court at the time of the prior decree, indicate that a change in circumstances has occurred. With the exception of Julia's live-in arrangement with Rosser at the time of the issuance of the decree, all the facts in the record before us appear to have occurred after said decree was issued. Reference has been made to the fact that William knew at the time of the issuance of the decree that his wife, Julia, was living with Rosser and that such conduct cannot, therefore, be considered a fact that has occurred since the issuance of the decree. Such an argument misinterprets the following phrase contained in R.C. 3109.04(B): "* * * which were unknown to the court at the time of the prior decree * * *." It is the *court's* knowledge, or lack thereof, of circumstances at the time of the issuance of the decree that is important in determining whether facts have arisen which were unknown prior to the issuance of the decree. The fact that the adverse party knew of such circumstances is not relevant. *Young* v. *Young* (March 22, 1979), Franklin App. No. 78AP-677, unreported. See, also, *Stellfox* v. *Stellfox* (July 24, 1979), Franklin App. No. 79AP-69, unreported.

There is no indication in the record before us that the trial court was aware of Julia's live-in arrangement with Rosser at the time the decree was entered. However, while a custodial parent's living arrangement with another person may be a basis upon which that parent loses custody of children, that is not the result where, at the time of the hearing, such activity has ceased and, in fact, as in this case, the custodial parent is married to the person with whom she had previously lived. Change of custody cannot properly be used as a penalty for past misconduct where the misconduct is not continuing and not shown to materially adversely affect the child. *Wedren* v. *Wedren* (Aug. 27, 1974), Franklin App. No. 74AP-103, unreported. There is no evidence in the record before us that the children were exposed to any sexual conduct by Julia and Rosser or that they were in any way materially affected by the paramour relationship, other than the residential instability caused, in part, by Julia and Rosser's desire to be together.

R.C. 3109.04(B)(3) (now R.C. 3109.04 [B][1][c]) is the statutory provision that directly relates to the circumstances in this case. It permits a change of custody if:

"The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of such change to the child."

As we noted in *Stout* v. *Stout* (Nov. 20, 1980), Franklin App. No. 80AP-385, unreported:

" 'A court's inquiry into the moral conduct or standards of a custodial parent is limited to a determination of the effect of such conduct on the child.' " (Quoting from *Whaley* v. *Whaley* [1978], 61 Ohio App. 2d 111 [15 O.O.3d 136], syllabus three.)

That rule applies to the other conditions of the child's environment referred to in R.C. 3109.04(B)(3). The referee's duty was to consider the environment that Julia would have provided the children if they had been with her rather than with William's parents at the time of the hearing. On that date, Julia was married to Rosser and they had been living in a townhouse apartment in Lancaster, Ohio, for four months; also, at that time, she was a waitress at a Bob Evans Restaurant. Prior to that time, she was employed at a Burger King Restaurant for three weeks. Rosser was unemployed but was on the union hall list to be employed. The report of the court investigator for the Court of Common Pleas of Fairfield County indicates that the Lancaster townhouse was "clean, neat and well cared for" and that there was ample room for the children if Julia were granted custody.

The referee's recommendation appears to be based upon his conclusions that "* * * there was no stable homelife for the children, * * *" and that they were moved from one school system to another and on his review of the investigative reports submitted by the Crawford, Fairfield and Franklin County court investigators. However, Julia's uncontradicted testimony at the hearing was that, in October or November 1980, after she and William were divorced, she could not afford to stay in the apartment in which they were living, so she and the two children moved to her father's house. They went to Logan, Ohio, for approximately five days to look for a house there, and the children were out of school for two days. While in Logan they stayed with Rosser's mother. When Julia returned to Columbus on a Tuesday, her father told her that he did not want her to continue living with him, so she and the two children and Rosser went to Cleveland that evening and stayed at Rosser's father's house until the following Monday. During that time, the children were presumably out of school, and one of the children contracted pneumonia but was treated without being hospitalized.

On the Monday that Julia and the children left Cleveland, they went to Glouster, Ohio, where Rosser's grandmother lived, and the school-age daughter was enrolled in school there on Tuesday. Julia had been in Glouster for a week when the children were taken to William's home for a visitation on Saturday. When Julia went to pick them up, they were gone. William had taken them to his parent's house in Bucyrus and, apparently, it was shortly thereafter, on January 23, 1981, that the motion for change of custody was filed by William. Julia testified that William knew when the children were in Cleveland and when they were in Glouster. William testified that he was required to engage in a considerable amount of his own investigative work to locate the children in Cleveland upon his return from a trip to California. While the record is not precise, it appears that the total amount of time the children were disrupted from their residence at Julia's father's house was no more than two weeks.

While the referee concluded that the children's physical, mental, moral and emotional development were harmed by Julia's relationship with her boyfriend (Rosser), and that the investigative reports submitted by the Crawford, Fairfield and Franklin County investigators "support and strengthen the Referee's finding," we are unable to determine upon what specific facts such a conclusion is based. To be sure, the period during which the children were being moved from Columbus to Logan to Cleveland to Glouster was a period of disruption for them. However, it was a short period of time and there is absolutely no evidence in the record indicating what effect their transient status had upon them.

The test required in *Stout* v. *Stout, supra,* has not been met in this case. The

testimony of William's parents and the report of the investigator in Crawford County indicate that the children were well adjusted and apparently reasonably happy living with their grandparents. It is reasonable to conclude that they were perhaps in a better environment than they would have been if they had been with their mother. However, we reemphasize that that is not the test. The General Assembly has established the policy of the law in this area by the adoption of R.C. 3109.04. The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. The statute is an attempt to provide some stability to the custodial status of children, even though the parent out of custody may be able to prove that he or she can provide a better environment. As we state in *Wedren* v. *Wedren, supra*:

"* * * The changed conditions, we stress, must be substantiated, continuing, and have a materially adverse effect upon the child. The latter is the paramount issue. * * *"

The judgment changing the custody of Nicole Wyss and Gregory Wyss from their mother, Julia Wyss (Rosser), is against the manifest weight of the evidence and is not in accordance with law. The first and second assignments of error are sustained.

Because of our disposition of the first and second assignments of error, the fourth assignment of error is not prejudicial and it is, therefore, overruled.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings consistent with this decision and in accordance with law.

*Judgment reversed*
*and cause remanded.*

REILLY and NORRIS, JJ., concur.