## Kampfer v. Kampfer
*[Cite as 8 AOA 225]*

*Case No. CA-8113*
*Stark County, (5th)*
*Decided December 31, 1990*

*Jack A. Blakeslee, 610 United Bank Plaza, 220 Market Ave., South, Canton, Ohio 44702, for Plaintiff-Appellant.*

*J. Whitney Ake, 401 Central Trust Tower, Canton, Ohio 44702, for Defendant-Appellee.*

MILLIGAN, J.

Following trial to the court, the Stark County Common Pleas Court, Division of Domestic Relations, dismissed the mother's complaint for divorce and granted a divorce to the parties on the grounds of the mother's adultery.

The mother appeals, limiting her error assignment to the award of custody to the father.

### ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN AWARDING CUSTODY OF THE PARTIES' MINOR CHILD TO APPELLEE FATHER SOLELY BECAUSE OF THE APPELLANT MOTHER'S EXTRAMARITAL AFFAIRS WHEN NO EVIDENCE WAS ADDUCED THAT THE CONDUCT OF THE APPELLANT HAD A SIGNIFICANT IMPACT ON THE CHILD.

This is an original request for custody (as distinguished from a proceeding to modify custody) triggering the application of R.C. 3109.04(A).

"Upon hearing the testimony of either or both parents... the court shall decide to whom the care, custody, and control of the children shall be given... The court shall take into account that which would be in the best interest of the children."

As relevant to the issue of custody we extrapolate from the findings of fact and conclusions of law the following:

"Rachel (mother) was an abused child beginning at the age of two or three. Her mother committed suicide when she was five. Her father married a woman who continued to abuse. She and her sibling where (sic) unfed, kept in the cellar and beaten. At the age of nine she was placed in a children's

home and at the age of eighteen was adopted by a great aunt and for the first time received the mothering she was seeking. She suffers from 'Paranoid Ideation.' One reaction to her terribly abusive childhood is her adherence to rule. She is dominate and rigid. Rachel admitted to an adulterous affair in 1981. The parties reconciled and after the child was born Rachel became distraught and started another relationship with a fellow teacher in March of 1988. She states that her husband was impotent and she ceased having relations with him after the birth of the child. Rachel inherited a trust from her adoptive father which at the time of hearing totaled $404,515.00. Her statement that the money created problems in the marriage has little merit. Basically Rachel has made an amazing life for herself despite her terrible abusive childhood. There is no indication that she acts out problems by being abusive, in fact, she appears highly disciplined and rigid as it would relate to her relationship with her son.

"***

"The Court is satisfied that both parents love their son and both possess adequate parenting skills. Rachell (sic) has very little family and therefore not much family support. This of course is not her fault but, a fact. Stephen comes from a strong family background and has a great deal of family support."

"***

"The Court finds that the Defendant has proven by a preponderance of the evidence that the Plaintiff has committed adultery and the Court will grant a divorce to the Defendant on that ground. The Court is further satisfied from the evidence that the plaintiff's illicit relationship and adulterous conduct can not be tolerated and that to place custody of the child with her would not be in the best interests for his moral upbringing, therefore, custody of Jonathan will be granted to the Defendant Stephen with specific visitation privileges to the Plaintiff as listed on Exhibit B which is attached and made a part of this order."

The moral behavior of a parent has been the subject of judicial scrutiny in both ancillary custodial proceedings and original proceedings for custody.

Those cases dealing with the impact of illicit relations or immorality upon motions to change custody are of little assistance in analyzing a case as *sub judice*. When considering a change of custody, the court must find a change of circumstances rendering the prior custody order to no longer be in the child's best interests. On an original custody proceeding, the court may make an award of custody based solely on the child's best interests.

The only case cited by appellant that lends credence to his argument that the court, in a divorce proceeding, may not award custody to a parent upon grounds of immorality of the adverse parent absent a finding that the conduct "had a deleterious or detrimental affect on the child" is *Townsend v. Townsend* (June 5, 1989), Lawrence App. No. 1876, unreported. That case does not stand for the proposition espoused by appellant. In *Townsend*, the court found no evidence to support a finding that the award of custody to the father was in the child's best interests. Rather, the mother was denied custody as a form of punishment for her conduct.

Here, we conclude from the findings of fact and conclusions of law that the trial court did find the best interest of the child to be served by granting custody to the father. Under all of the circumstances it may be that the immoral behavior of the mother, repeated as indicated, was the evidentiary straw that broke the camel's back upon the balancing of the claims of two parties the court acknowledges to be suitable, fit parents.

*Kraus v. Kraus* (1983), 10 Ohio App.3d 63, 460 N.E.2d 680, and *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 445 N.E.2d 1153, are inapposite.

We have further examined the transcript and find that the custodial judgment of the trial court is supported by substantial credible evidence.

The single assignment of error is overruled and the judgment of the Stark County Common Pleas Court, Division of Domestic Relations, is affirmed.

PUTMAN, P.J., and GWIN, J., concur.