OPINION
Defendant-appellant, Jeffrey T. Allgood, appeals the decision of the Warren County Court of Common Pleas, Domestic Relations Division, denying his motion for change of custody of the parties' minor child, Krista Allgood (born on July 6, 1992).
The parties were divorced on January 23, 1995. By divorce decree filed that day, the trial court designated plaintiff-appellee, Christy R. Allgood (nka Krebs), as the residential parent of the minor child and ordered appellant to pay appellee $339.92 per month in child support. By entry filed May 31, 1995, the trial court reduced appellant's child support obligation to $250.31 per month, to which it added $21.67 per month for child support arrearages for a total of $277.42 per month. On April 16, 1997, appellant filed a motion for change of custody. Appellee lives in Ohio and appellant lives in Michigan.
The magistrate held a hearing on appellant's motion on October 27, 1997 and February 9, 1998. The magistrate heard testimony from Jane Groh, a social worker for Community Mental Health Centers of Warren County, who performed an evaluation of both parties. The magistrate also heard testimony from both parties and from friends and relatives of both parties.
In a decision filed on September 4, 1998, the magistrate found that "there ha[d] been a change in the circumstances of [Krista] * * * and of her residential parent, such that a modification [was] necessary to serve the best interest of [Krista]. Specifically, mother has lived in several different locations and has had several jobs within the last four years. Father has obtained stable housing and stable employment in the State of Michigan and [Krista] has become acclimated to that environment while visiting Father within the last four years." The magistrate further found that "the harm likely to be caused by changing custody from mother to father is outweighed by the advantages of such change of environment to [Krista]."
The magistrate found that (1) "during the [parties'] evaluation [Krista] interacted more positively with father in that she was more relaxed with father and more easily directed by father, [and] * * * spontaneously referred to father's residence in Michigan and * * * to activities that she and father engaged in;" (2) "[Krista] is well adjusted to life in Michigan;" and (3) "father will probably be slightly more likely to facilitate visitation between [Krista] and her mother." The magistrate acknowledged that "Father has failed to consistently meet his child support obligation and currently owes substantial arrearage" and that in that respect, "[f]ather was not acting in [Krista's] best interest." The magistrate found, however, that this factor was outweighed by all of the other statutory factors and recommended that appellant's motion for change of custody be granted.
On September 14, 1998, appellee filed objections to the magistrate's decision. By entry filed November 25, 1998, the trial court found that the magistrate erred in recommending that the custody of Krista be transferred, and denied appellant's motion for change of custody. This timely appeal follows in which appellant raises two assignments of error. Because both assignments of error challenge the trial court's denial of appellant's motion for change of custody, they will be addressed together.
In his first assignment of error, appellant argues the trial court abused its discretion by concluding that no change of circumstances existed. Appellant contends that a sufficient change of circumstances existed because appellee had changed residences and jobs very frequently since the custody order, and because Krista had become acclimated to his household and was about to begin school. In his second assignment of error, appellant argues the trial court abused its discretion in concluding that transferring custody to him was not in Krista's best interest. Appellant contends it was error for the trial court to deny his motion when the only statutory factor that weighed against him was inconsistent payment of child support and nearly all the other factors governing Krista's best interest supported a change of custody.
It is well-established that a trial court has broad discretion in custody proceedings. Davis v. Flickinger (1997),77 Ohio St.3d 415, 416-417. The trial court's judgment will not be reversed on appeal absent an abuse of discretion. Id. at paragraph one of the syllabus. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
R.C. 3109.04(E) (1) (a) governs the modification of a previous order allocating parental rights and responsibilities (fka custody order) and states in relevant part:
 The court shall not modify a prior decree allocating parental rights and responsibilities unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies:
* * *
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
Therefore, the trial court may modify parental rights and responsibilities only if it finds that: (1) there has been a change of circumstances, (2) a modification is in the best interest of the child, and (3) any harm likely to result from a change of environment is outweighed by the advantages of the change. R.C. 3109.04(E) (1) (a) (iii).
The initial determination to be made by the trial court is whether there has been a change of circumstances of the child or the residential parent since the prior court order. Wyss v. Wyss
(1982), 3 Ohio App.3d 412, 414. This finding should be made prior to weighing the child's best interest. See Green v. Green (Mar. 31, 1998), Lake App. No. 96-L-145, unreported. The purpose of finding a change of circumstances is to prevent a constant relitigation of issues which have already been determined by the trial court. Clyborn v. Clyborn (1994), 93 Ohio App.3d 192, 196. As a result, "the change must be a change of substance, not a slight or inconsequential change." Flickinger,77 Ohio St.3d at 418.
In its entry denying appellant's motion for change of custody, the trial court stated in relevant part the following:
 The Court has read the transcript and reviewed the exhibits carefully. The Court now finds that the principle of "legal inertia" is impliedly contained within [R.C.] 3109.04(B) (1) [sic]. This Court should not change the parenting status of this child without a showing that either the mother's situation has changed to the detriment of the child or that the child's situation has changed from the time the last custody decision was made. Here a very close question exists. Certainly the Magistrate was justified in finding that mother's life has lacked desired stability. She has moved continuously during this little girl's life. Uprooting the child repeatedly can't be good for the child. * * *
 Mother's explanation for her frequent moves has a ring of credibility to it however. She had two children prior to marrying father herein and giving birth to Krista. She was under an order to pay child support to those children who live with their father primarily. Father, here repeatedly failed to pay his child support as ordered. * * * [T]he Court finds that father's own misconduct in not paying his ordered child support contributed to mother's financial problems. Therefore, * * * the Magistrate has erred in finding that there has been a sufficient change in her circumstances that has harmed the child and that custody should be transferred to the father.
 Even if the changed circumstances tests were adequately met by this record, the Court would nevertheless conclude that a change would not be in the child's best interest. While the Court agrees that husband would be the slightly preferred parent because he has established a modest amount of greater stability than has wife, the Court notes that he after this divorce wisely chose not to try to gain custody of the infant child since he himself lacked the stability to provide her with a stable environment. Now he lives with a finance [sic] by whom he has had a little girl out of wedlock. He * * * has moved three or four times himself.
 In essence, each parent is working hard to provide for the financial support of the child and each now offers a relatively stable environment. Mother is working full-time and going to college two evenings per week to complete her education to better provide for all three of her children. * * * [S]he has two half siblings to Krista * * * who regularly visit and from the record appear to be bonding well with her. Father also has a half sibling for Krista and she can continue to develop and bond with here [sic]. Therefore, while the Court accepts Jane Groh's recommendation that father does a slightly better job of relating to the child and directing and supervising her, that alone does not persuade the Court that it is in Krista's best interest to designate him as her residential parent. His irresponsibility in not paying child support and the relatively minimal contact that he had with her during the first two years of her life, out weigh [sic] the slight advantage that he offers as a parent. * * * [I]t is not enough to claim to want to be a parent. Actions speak far louder than words. A parent who won't pay the ordered support for a child harms that child. * * * By wife's testimony, husband was in arrears more than $3500.00 when he brought this motion to change custody. In slightly over two years from the time of the divorce, therefore, his arrearages exceeded the amount of the payments that he had made.
 Mother has her mother to assist her with the care of the child. Father living in Michigan has extended family and friends to assist him in the care of the child. Thus, while the Court has no quarrel with the finding that father can properly care for this child and he undoubtedly loves her and wants to provide for her, his having failed to do so financially counter balances his professed interest in the child's well-being. * * * The Court orders the Motion to Change Custody of the child dismissed.
After thoroughly reviewing the record,[1] we find it amply supports the trial court's decision. Both parties were described as suitable parents who loved and deeply cared for Krista. Both parties were also described as capable of caring for Krista. While Groh stated that it would be in Krista's best interest to live with her father rather than with her mother, her testimony only indicated that appellant was a slightly better parent.
Groh stated that due to time and travel considerations, she had condensed the evaluation of both parties over one meeting for each parent instead of several shorter meetings. Groh admitted that a condensed evaluation made it more difficult to have a completely accurate evaluation. Groh testified that during appellee's evaluation, Krista seemed much more distractible and did not seem to take direction from her mother very well. Groh testified that, by contrast, during appellant's evaluation, Kristaseemed very relaxed and very focused. Groh testified that during both parties' evaluations, Krista always spontaneously referred to her father and to activities they had engaged in. Groh explained her recommendation that custody be transferred to appellant as follows: "[Krista] seemed much more comfortable with her dad * * * [who seemed to be] more aware of what her needs were for growth and development * * *. When asked which parent would be more likely to facilitate a relationship with the nonresidential parent, Groh stated that "[I]t seemed that [appellant] was more concerned about [that] relationship than [appellee]." Groh also stated that appellant "seemed to have more of an understanding of how important it is for a child to have contact with her mother." (Emphasis added.)
Pam Bullock, appellee's stepmother and a special education supervisor at Warren County Educational Service Center, described appellee as a caring, concerned mother who did "a fine job" taking care of her children's physical and emotional needs. Bullock testified that both parties were capable of taking care of Krista, whom she described as "a little bit hyperactive." Bullock testified that Krista "has difficulty sitting in the classroom * * * still, focusing, paying attention." Bullock agreed that Krista should be in an environment where she can be calm, comfortable, and focused. Bullock also testified that Krista, who was enrolled in a speech therapy program, "need[ed] few changes as possible and the continuation of services that are at this time successful and improving her educational and her speech therapy needs."
Teresa L. Doyle, appellee's mother, described appellee as a very good, caring mother "who would go without for her children [and] who work[ed] hard for them." Doyle testified that it had been a struggle for appellee to provide financially for her children but that she had "carried on." Doyle described the relationship between all of appellee's children as good. Doyle also described Krista as "very alert, very active, high energy, playful, imaginative[,] * * * a normal five year old." Doyle testified that in 1995 she was Krista's sole day-care provider and that during that year, appellant had Krista only three times. Appellee, in turn, testified that in 1995 and 1996, she "hounded [appellant] consistently" on the fact that he was not visiting very often. Doyle testified that the bond between Krista and appellee was very tight.
Peter E. Workman, a former co-worker of appellee who was then sharing an apartment with her for financial reasons, testified that appellee was a good mother who helped Krista with her speech and who wanted appellant to be a part of Krista's life. Workman testified that appellee's children got along very well. Workman testified that appellee was a responsible person financially who paid her bills on time.
Appellant contends that Krista's strong relationship with him and the fact that she will be in first grade constitute a change of circumstances which warrants a change of custody. We note that appellant has not cited, and we have not found any caselaw supporting appellant's contention. We doubt the legislature intended for any school change to constitute a change of circumstances in the child warranting a change of custody. Were it so, any nonresidential parent would seek custody based solely upon a strong relationship and the fact that the child would be entering kindergarten, first grade, junior high school, or high school. Granting a change of custody solely upon those grounds would foster rather than prevent a constant relitigation of the issues already determined by the trial court in its prior custody order. Clyborn, 93 Ohio App.3d at 196.
Appellant also contends that the fact that appellee has "held five different jobs and lived in seven different places" since their divorce in 1995 constitutes a change of circumstances which warrants a change of custody. Appellee testified that she has been working at Cintas since October 1997 and that she was enrolled at the University of Cincinnati studying human resources and business law. Appellee stated she hoped to get a Bachelor's Degree in human resources by the year 2002 to 2003 and use that as a stepping stone for a law degree. The record shows that prior to working at Cintas, appellee worked four different jobs at three different companies.
The record shows that with the exception of one job where she and her employer mutually agreed it was not working out, appellee changed jobs either to get a better job with better benefits and more money, or because she worked too many hours and did not have enough time with Krista. Appellee testified that after their divorce, she could barely make ends meet at times and that appellant was not always paying child support. Appellee testified that despite her financial struggle, she has never borrowed money. She also testified that at the time of the hearing, she did not owe any child support arrearage to the father of her other two children.
With regard to her various residences, appellee testified that following their divorce, she first stayed with her mother. Appellee then lived in two different apartments before she moved into a residence on State Route 42 with her then-husband, Jerry Krebs. Following her separation from Krebs, appellee temporarily lived with her parents-in-law until the apartment she was living in at the time of the hearing became available. Appellee testified she moved to the apartment in June 1997.
Unlike appellant, we find that appellee's changes of jobs and residences do not constitute a change of circumstances. Appellee's testimony clearly explains why she changed jobs and residences. As such, appellee's change of jobs and residences did not constitute the "change of substance" necessary to support a change of custody as envisioned by the Ohio Supreme Court.Flickinger, 77 Ohio St.3d at 418.
The record shows that before he became a safety supervisor at Trenton Forge in May 1996, appellant also had an unstable job situation. Appellant testified that he did not seek custody of Krista after the parties' divorce because he "was not employed well enough" and "residency was kind of shaky at that time." The record shows that before he moved in with his fiancée in their current apartment, appellant had lived in three different places. The record also shows that he had a roommate for two or three months in the summer of 1997. Appellant testified that he now has a very good and stable job, a good income, and a stable residence. Appellant thought Krista would be better off with him because he would provide her with a stable environment.
Appellant admitted failing to pay his child support obligation on a regular basis. The record shows that while he was making about $16,000 in 1995 and about $21,000 in 1996, appellant made a $138.71 payment in October 1995 (when his child support obligation, which also included arrearage, was then $277.42 per month) and did not make another payment until June 1996. Appellant made also no payment in July 1996. The record shows that in 1997, appellant made about $38,800. Yet, he did not make any payments in February and July 1997, and only made a payment of $245 in January 1997 and $100 in September 1997. Appellant also admitted only paying $80 of the $151 he owed appellee for medical bills for Krista.
The record shows that Krista has been enrolled in a speech therapy program since shortly after the school started. Appellee testified she has been concerned with Krista's speech since she was three years old and that she jumped at the first opportunity she had to get Krista fully assessed professionally. Appellee testified that she has been actively working on Krista's speech since the school year. Bullock testified that while both parties were capable parents, her "major concern [was] the consistent education and continuation of therapy. * * * My only concern is that there be some consistency as far as continuing those services." Appellant testified that while he had chosen a pediatrician and looked into various schools, he had not made any arrangements regarding speech therapy for Krista, even though he was aware of Krista's need for speech therapy.
After thoroughly reviewing the record, we find that the trial court did not abuse its discretion in finding that there was no change of circumstances. The alleged changes of circumstances do not constitute "changes in substance" sufficient to warrant a change of custody determination. Appellant's argument that he has now achieved stability in his job, life, and housing situation amounts to nothing more than the argument that Krista would be better off with him and that he would provide her with a better environment. However, evidence that a child would be better off is not sufficient to support a change of custody. See Well v.Well (1990), 70 Ohio App.3d 606. Similarly, custody of a child will not be changed merely on a showing by the nonresidential parent that he can provide a better environment than the residential parent. See Wyss, 3 Ohio App.3d 412.
In addition, assuming, arguendo, that there was a change of circumstances, there was still no evidence to show a change of custody would be in Krista's best interest. A review of the statutory factors to be considered by a trial court in determining a child's best interest and set forth in R.C. 3109.04(F) (1)[2]
shows that they do not tip the balance in favor of appellant. Rather, a review of those factors and the record shows that, with the exception of the factor set forth in R.C. 3109.04(F) (1) (g), both parties meet them. While Groh stated that appellant would be a better parent, she did not find, nor was there any evidence that appellee was not a suitable and capable parent or that Krista was not doing well with her mother. As the trial court noted, "each parent is working hard to provide for the financial support of the child and each now offers a relatively stable environment." We thus find the trial court did not abuse its discretion in concluding that it would not be in Krista's best interest to designate appellant as the residential parent.
We therefore find that the trial court did not abuse its discretion in denying appellant's motion for change of custody. Appellant's first and second assignments of error are overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] We note that none of the exhibits submitted and admitted at the hearing on appellant's motion for change of custody, including Jane Groh's report on both parties, were included in the record before us. As a result, they cannot be considered by this court and our decision will be solely based upon the transcript of the hearing.
[2] R.C. 3109.04(F) (1) provides that in determining the best interest of a child on a modification of a custody decree, the trial court must consider the following factors:
(a) The wishes of the child's parents regarding his care;
(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to his home, school, and community;
(e) The mental and physical health of all persons involved in the situation;
(f) The parent more likely to honor and facilitate visitation * * *;
(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused * * * or a neglected child; * * *
(i) Whether the residential parent * * * has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
(j) Whether either parent has established a residence * * * outside this state.