OPINION
Gary M. Pennington is appealing the decision of the Montgomery County Domestic Relations Court sustaining objections filed by Jennifer E. Pennington (Rowe) regarding a custody matter.
Gary and Jennifer were married on October 6, 1993 and were divorced on October 31, 1997. Austin M. Pennington was the only child born as issue of the marriage, born on June 28, 1995. During the pendency of the divorce proceedings, the trial court granted temporary custody to Gary. On June 8, 1998, the trial court designated Jennifer as the residential parent and legal custodian of Austin, however Gary was granted liberal amounts of parenting time.
On July 25, 2000, Jennifer filed a motion to relocate to the Commonwealth of Virginia. Gary filed a motion for change of custody and modification of parenting time and child support on August 4, 2000. He asserted that when he had visited Jennifer's apartment on August 1, 2000, she had apparently moved out of the apartment without notice to him of her whereabouts. Gary contended that Jennifer and Austin had moved five times in the last two and one-half years, and that Jennifer had worked at five jobs within the past two years.
During August of 2000, Gary exercised his vacation visitation with Austin. When Jennifer returned to Ohio to pick up Austin, Gary refused to allow Jennifer to take Austin back to Virginia. In response, Jennifer filed a motion for return of custody of Austin. Gary returned Austin to her before the trial court ruled on the motion.
The magistrate held hearings on Gary's motion for a change of custody on December 21, 2000 and January 8, 2001. The magistrate granted Gary's motion on January 16, 2001, designating Gary as the residential parent and legal custodian. Jennifer was ordered to pay $270 per month in child support, to be off set by Gary's accumulated arrearage. Parenting time was modified to provide Jennifer with visitation during the months in which holidays fell on a Monday, so that Jennifer would be able to visit during the three-day weekends. Jennifer was also granted six continuous weeks of parenting time during the summer.
Jennifer filed her objections to the magistrate's decision on January 30, 2001. Jennifer argued that the magistrate's decision should be overruled because the court did not have sufficient evidence of a change in circumstances upon which to change custody. In particular, Jennifer argued that the relocation of a parent in and of itself does not constitute a change of circumstances. Instead, the court must consider all of the factors in R.C. 3109.04(F)(1) and determine what is in the child's best interests prior to modifying parental rights and responsibilities.
The trial court filed its decision overruling the magistrate's decision on October 1, 2001. The trial court found that both parents had been bonded to Austin, and that both could provide a loving, adequate home for him. Although Austin had developed more friendships in Ohio, the trial court found that the magistrate had mischaracterized Jennifer's move to Virginia as a "selfish act." The trial court noted the following:
 Defendant admitted that she lived with a female friend for approximately five months before moving into the home of her then fiancé for more than a year. When that relationship ended, she sought full time employment in Virginia and sought the assistance of her parents to help her and Austin get settled. The frequency of job changes was due in part to the fact that plaintiff was significantly in arrears on his child support obligation. Additionally, she lost one position because she attended to the health needs of Austin as a priority versus her job.
 The magistrate found the relocation to Virginia as a selfish act without consideration of the impact on the child. Upon review, the court views the matter differently. Testimony was offered that the defendant had just ended a relationship and needed to find other accommodations for herself and Austin. She also needed a better paying position to make up for the underpayment of child support. A family member offered her a position as a security officer in Virginia and her parents opened their home to her and Austin. She purposely elected to take a position on the third shift so that she would be home when Austin left for school and when he returned from school. Her work hours were 10:00 pm to 6:00 am. She scheduled her hours to be available when Austin was home.
(Doc. No. 14, p. 3.)
The trial court also noted that Jennifer would drive from Virginia to Ohio to accommodate Gary's parenting time, and that because of the traveling time during these visits, Austin had missed twelve days of school. The trial court examined the depositions of Austin's teacher and school principal in Virginia and found that these depositions offered "critical insight" into what would be in Austin's best interests. Additionally, the trial court mentioned that due to time constraints, the GAL had been unable to contact family or school officials in Virginia to determine what kind of impact the move had had upon Austin.
The trial court found that "absent the move to Virginia, the instant case would not be before the court." Based upon the totality of the circumstances, mainly because Jennifer exhibited proper parenting skills, facilitated parenting time between Gary and Austin, and met all of Austin's needs, the trial court overruled the magistrate's decision.
Gary now appeals the trial court's judgment overruling the magistrate's decision, asserting one assignment of error.
 The trial court's judgment rejecting the magistrate's decision and denying Gary's motion for a change of custody was against the manifest weight of the evidence because it was based on errors of fact and law.
Gary complains that the trial court abused its discretion by overruling the magistrate's decision. He contends that a change in Austin's residence was a factor that justified a change in custody because the move to Virginia had adversely affected Austin's best interests.
Preliminarily, we note that after diligent searches on the part of the clerk's offices, the trial transcript and the depositions upon which the trial court relied in making its decision have not been located[1]. It is an appellant's duty to ensure that a copy of the transcript is filed with the reviewing court and that the record is complete. App.R. 9. In this case, the record reflects that the transcript was filed for the direct appeal, but somewhere during the course of the appeal the transcript has been lost. Where the record is incomplete, an appellate court will indulge in all reasonable presumptions consistent with the record in favor of the validity of the judgment under review and the legality of the proceedings below. See Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218. Since these documents are missing, we must presume that the trial court acted with regularity and did not abuse its discretion.
In any event, the trial court was correct in its analysis that a move to another state does not alone equate to a change in circumstances. R.C. 3109.04(E)(1)(a) lists the factors a court must consider before it can the modify a decree that has allocated parental rights:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree * * * that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
A trial court's determination regarding a change in circumstances should not be disturbed, absent an abuse of discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, syllabus, 1997-Ohio-260. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
"R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest." Madden v. Madden (June 14, 1996), Montgomery App. No. 15576, unreported. The statute creates the presumption to give stability to the children's custodial status. See Wyss v. Wyss (1982),3 Ohio App.3d 412, 416.
In evaluating whether or not there has been a change of circumstances to warrant a change of custody, "the change must be a change of substance, not a slight or inconsequential change." Davis, supra, at 418, 1997-Ohio-260. In order to find a change of circumstances that would justify a modification of custody, a party seeking modification because the other party is planning to move must show some fact or circumstance other than the mere move that militates against continuing the present allocation of parental rights. See Vincenzo v. Vincenzo
(1982), 2 Ohio App.3d 307. Such a move may constitute a change of circumstances where there is evidence of other adverse effects, such as a disruption in ongoing relationships with extended family. See Clontz v.Clontz (Mar. 9, 1992), Butler App. No. CA91-02-027, unreported.
A court-ordered residency restriction unduly burdens a party's constitutional right to travel guaranteed by the Fourteenth Amendment of the United States Constitution and by Article I, Section 1 of the Ohio Constitution if it restricts the ability of the party to live where he or she chooses. Smeltzer v. Smeltzer (Nov. 24, 1993), Columbiana App. No. 92-C-50, unreported. However, if it is in the child's best interest to remain in a particular location, the residential parent's right to travel is not unduly burdened. Kelly v. Kelly (June 8, 1994), Hamilton App. No. C-930337, unreported.
In the present case, Gary alleges that the move has had a significant negative impact upon Austin. He claims that Jennifer has moved four times within the past two years, and this does not provide a stable environment for Austin. Gary also asserts that Jennifer's move to Virginia has taken Austin away from his friends, family and school in Ohio, and thus it was not in Austin's best interests to designate Jennifer as the residential parent.
Considering the evidence before us, and presuming regularity in the trial court's proceedings, we find that the trial court did not abuse its discretion by finding that the proposed move did not amount to a change of circumstances warranting further inquiry into the motion to modify custody. No evidence was presented which would demonstrate that the move would have any other detrimental impact upon Austin. To the contrary, the trial court's decision states that Jennifer's moves have been made with consideration of making life better for Austin and her, and that she had moved to Virginia to take a stable job with better income and hours. She has been very accommodating and has facilitated parenting time between Gary and Austin. Moreover, although Austin moved away from family and friends in Ohio, there is no evidence that his relationship with his extended family in Ohio was disrupted, or that the move had had a significant negative impact upon Austin.
Accordingly, Gary's assignment of error is overruled.
The judgment of the trial court is affirmed.
WOLFF, P.J. and FAIN, J., concur.
[1] Gary also argues that it was error for the trial court to afford weight to the depositions that Jennifer had proffered at the hearing. Because the magistrate did not admit them as exhibits, he contends that the depositions should not have been considered by the trial court. However, without the transcript of the hearing before us, we are unable to determine the validity of this claim, and we must presume regularity in the trial court's decision.