DECISION AND JUDGMENT ENTRY
{¶ 1} Sandra Hinton (nka Boston) appeals the Washington County Court of Common Pleas' decision denying her motion for modification of the custody order relating to her two children. Hinton contends that a change of circumstances has occurred and that the trial court should have named her as the residential parent of the children. Because some competent, credible evidence in the record supports the trial court's conclusion that no change of circumstances occurred, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} The parties, Gregory Hinton and Sandra Hinton were married on April 9, 1988, and two children were born as issue of the marriage, Christopher (DOB November 12, 1993), and Alicia (DOB June 13, 1996). The parties obtained a divorce on September 2, 1998 by a Final Entry in Divorce, which incorporated and approved an oral agreement between the parties, which counsel for the parties read into the record.[1]
 {¶ 3} The Final Entry in Divorce provides that father is the residential parent and legal custodian of the parties' minor children. At the time of the divorce mother resided in Indiana. The court granted visitation pursuant to the standard orders for long distance visitation with Christopher, and modified standard orders for long distance visitation with Alicia due to the special medical needs created by Alicia's cerebral palsy.
 {¶ 4} Since the divorce, mother remarried and relocated to the State of Florida. Father has not remarried, and continues to reside with the children in the Washington County area, in close proximity to his family and his former wife's family.
 {¶ 5} On June 7, 2001, mother filed a Motion for Visitation requesting, essentially, that the court grant standard long distance visitation with Alicia due to the fact that she now is able to provide the necessary medical care for Alicia in her own home. On July 5, 2001, the court issued an order for visitation, expanding mother's visitation with Alicia for that summer, provided she meet certain conditions, and further providing mother with standard orders of long distance visitation with Alicia beginning in the summer of 2002.
 {¶ 6} On November 19, 2001, mother filed a Motion to Modify Custody, wherein she requested that the court name her as the residential parent of the minor children. In her affidavit, mother alleges that father has violated the standard orders of companionship by: (1) not answering the telephone, not allowing Christopher to return her calls, or otherwise interfering with her telephone contact with Christopher; (2) criticizing her in front of the children; (3) rarely informing her of medical appointments and/or meetings regarding Alicia's healthcare; and, (4) failing to inform her of the children's activities and/or schooling. Further, mother alleges that father is not providing adequate medical treatment for Alicia's dislocated hip.
 {¶ 7} The trial court conducted a hearing on mother's motion for custody on June 12 and 13, 2002, and heard the testimony of the parties and numerous other witnesses. On July 17, 2002, the trial court issued a Decision with findings of fact and conclusions of law denying mother's motion on the ground that no change of circumstances warranting a change of custody occurred. Additionally, the trial court found that a change of custody is not in the best interest of the children.
 {¶ 8} Mother appeals the decision of the trial court, arguing that the trial court erred in determining that no change in circumstances of the minor children warranting a modification of custody occurred, and, therefore, that the trial court erred in maintaining custody of the minor children with father on that basis.[2] We disagree.
 II. {¶ 9} In domestic relations matters, a trial court is vested with broad discretion to do what is equitable under the facts and circumstances of each case. See Cherry v. Cherry (1981), 66 Ohio St.2d 348,355. We will not disturb the trial court's decision regarding a motion for a child custody modification on appeal unless the trial court abused that discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219; Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
 {¶ 10} We must give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80. So long as the decision of the trial court is supported by some competent, credible evidence going to all of the essential elements of the case, we will not disturb it.Masitto v. Masitto (1986), 22 Ohio St.3d 63, 66; See C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 11} R.C. 3109.04(E)(1)(a) provides in relevant part:
"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: (i) The residential parent agrees to a change in the residential parent * * *; (ii) The child, with the consent of the residential parent * * * has been integrated into the family of the person seeking to become the residential parent; (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 12} Thus, the threshold inquiry is whether a change of circumstances occurred since the prior decree that would warrant a change of custody. If no change in circumstances occurred, the requirements for a change of custody cannot be satisfied, and no further analysis is required.
 {¶ 13} As this court has previously noted, "[i]t is a well settled rule in Ohio that a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a `change of circumstances' which would allow for modification of custody." Holm v.Smilowitz (1992), 83 Ohio App.3d 757, 773, citing Lenzer v. Lenzer
(1962), 115 Ohio App. 442; Well v. Well (1990), 70 Ohio App.3d 606, 610
(Harsha, J., dissenting); Grant v. Grant (July 21, 1989), Wood App. No. WD-88-29, unreported; Gordon v. Gordon (Oct. 9, 1987), Athens App. No. 1334, unreported. If father interfered with mother's visitation rights, that interference could constitute a change of circumstances for purposes of a change of custody.
 {¶ 14} Here, the trial court found the only changes in circumstances since the time of the original decree were changes in the mother's circumstances, namely that she remarried and moved from the State of Indiana to the State of Florida. The record also reflects that since the time of the divorce, mother completed her education and training, and is now a licensed practical nurse in the states of Ohio, Indiana, and Florida. The trial court found that "[t]hese are not changes in the circumstances of the children. The circumstances of the children are exactly the same as they were at the time of the prior Order in this matter." While we acknowledge that a change in a parent's situation can sometimes impact the child's well-being, we agree that "[i]t is not sufficient for the moving party to merely show that [s]he can provide a better environment than the environment provided by the parent with custody." Wyss v. Wyss (1982), 3 Ohio App.3d 412, 414; Price v. Price
(April 13, 2000), Highland App. No. 99CA12, unreported, citing Wyss.
 {¶ 15} Mother alleges a change in circumstances based upon father's alleged interference with her visitation, father's alleged failure to keep her informed with regard to the children's medical and educational issues, and father's alleged failure to provide adequate medical attention for Alicia's dislocated hip. However, the record reflects that father has caused little, if any, interference with mother's visitation rights. The record reflects that mother has routinely exercised her visitation rights, and that father has only denied her requests for additional time, beyond what she receives under the existing court order.
 {¶ 16} Mother alleges that father has interfered with her telephone access to Christopher, stating that she repeatedly calls, only to have no one answer the phone, or to learn that Christopher is not available to take her calls. However, mother's own testimony was that her telephone attempts have been successful "[a]t least once a week." Thus, father has not denied mother reasonable telephone communication with Christopher.
 {¶ 17} Additionally, mother alleges father's denial of her visitation rights as a change in circumstances, citing two specific incidents. In the first incident, mother requested weekend visitation at her home in Indiana so that the children could see her graduate from college. Father denied this request because it was his "birthday weekend." The other incident involved mother's request for one additional day at the end of her summer visitation with Christopher.
 {¶ 18} Pursuant to the trial court's standard orders for long distance visitation, the non-residential parent is entitled to visitation during the children's spring, summer, Thanksgiving, and Christmas vacation periods. The local standard orders also provide for additional visitation in the non-residential parent's area as follows: "The residential parent upon getting one week's notice from the Non-residential Parent shall give the Non-Residential parent visitation in the area of the home of the Non-Residential Parent once a month, provided that transportation time shall not exceed three hours each way."
 {¶ 19} Mother gave father ample notice of her request for visitation so that the children could see her graduation. However, the plain language of the standard visitation order did not obligate father to grant mother's request due to the fact that the transportation time from father's residence to mother's residence was, according to mother's testimony, at least five hours — two hours longer than the maximum time permitted by the rule.
 {¶ 20} This court recognizes it is beneficial to the children to have a residential parent accommodate a non-residential parent's requests for additional parenting time, particularly when a long-distance visitation schedule is necessary and the non-residential parent's time with the children is limited. In such circumstances, we expect residential parents to make a good faith effort to accommodate such requests when the requested time will not unduly interfere with their own plans for the children. Here, it would have been appropriate for father to allow the children to attend their mother's graduation. However, the standard orders for long distance visitation did not obligate him to do so. Thus, this court cannot find that father's denial of mother's occasional request for additional visitation is interference with or obstruction of mother's visitation rights.
 {¶ 21} Similarly, the standard orders for long distance visitation provide that the non-residential parent shall have the children for one-half of the summer vacation. Pursuant to the July 5, 2001 Order for Visitation, mother was entitled to six weeks of visitation with Christopher during the summer of 2001, commencing the weekend of June 23.
 {¶ 22} Mother's visitation commenced on Thursday, June 21 when Christopher went to his maternal grandparent's home following his baseball game. Arguably, mother's six-week visitation should have ended the evening of Thursday, August 2, exactly six weeks after it commenced. Mother actually had Christopher until Saturday, August 4, and requested that father allow her to keep him until Sunday, August 5.
 {¶ 23} The parties ultimately sought the guidance of the court to resolve their disagreement regarding the end date for mother's summer visitation, and, after consulting with the court, filed an agreed entry stating that father would pick Christopher up from mother's home on Saturday, August 4. At the hearing on mother's motion for custody, Father testified that, with his knowledge, his former counsel told the court that father wanted mother's visitation to end on Saturday, because he would be driving to Florida to get Christopher. Father testified that he had rented a car for the trip. Father also testified that, sometime after he learned that the pick-up date would be Saturday, he arranged to fly, rather than drive, to Florida. There was no testimony as to the reason for father's change in travel plans. We do not condone the behavior of father and his former counsel, if, in fact, they misrepresented father's reasons for denying mother's request for an extra day of visitation. However, father's refusal to allow mother to keep Christopher an extra day, above and beyond that which she was entitled to receive pursuant to the visitation order, cannot be characterized as interference with or obstruction of mother's visitation rights.
 {¶ 24} Mother's own testimony also refutes her allegations regarding the lack of communication and/or access to the children's medical and educational information. While, technically speaking, father may not have initiated conversations with mother regarding the children's medical and educational progress, mother's testimony demonstrated that she had intimate knowledge of these issues. As the trial court noted, "[i]t appears to the court that the parties have cooperated extensively to facilitate visitation and to keep each other advised of the condition of Alicia and as to their son, Christopher."
 {¶ 25} Mother argues that she was not timely informed of Alicia's most recent surgery, which included a second procedure for her dislocated hip and removal of her tonsils. However, mother testified that she personally took Alicia to the pediatrician when she appeared to have difficulty breathing, and mother got the referral to an ENT. Mother was also aware that Alicia was on antibiotics "at least monthly" prior to the surgery. Alicia's physical therapist, Adrienne Nagy, testified that she spoke with mother about Alicia's dislocated hip before the second surgery, and mother testified that she had approximately ten days notice of the scheduled date of the surgery. This testimony clearly demonstrates that mother does have access to and receives information regarding Alicia's healthcare.
 {¶ 26} Additionally, mother acknowledged in her testimony that since the filing of her motion, father has provided her with information regarding the children's schooling. Mother also testified that she was able to obtain information directly from the schools prior to the filing of said motion. Thus, mother's right to timely information regarding the children's educational progress has not been unduly compromised.
 {¶ 27} Mother contends that father has neglected Alicia. Specifically, Mother contends that father has been neglectful in his failure to pursue additional surgery for Alicia's hip, and that his failure constitutes a change in circumstances. However, Alicia's physical therapist testified that there is a strong likelihood that additional surgery to correct Alicia's dislocated hip would not be successful, and would likely cause her significant additional pain. Father's failure to pursue additional surgical treatment for this chronic, and possibly irreversible, condition does not constitute a change in circumstances.
 {¶ 28} Additionally, a number of individuals involved in Alicia's care testified that she is well cared for and loved by her father. As mandatory reporters of child abuse and neglect pursuant to R.C. 2151.421, they testified that, in their interactions with Alicia and her father, they have not seen anything that would cause them to make a report of abuse or neglect.
 {¶ 29} Thus, the trial court's finding that "[t]here is absolutely no evidence that Mr. Hinton has neglected in the least bit any of his duties to his children" is supported by the record.
 {¶ 30} In sum, the record contains ample competent, credible evidence to support the trial court's conclusion that no change in circumstances warranting a change of custody occurred. The interference with mother's visitation rights, if any, does not rise to the level of "systematic" or "continuous and willful" interference that we have previously found to constitute a change in circumstances. Based upon the foregoing, this court cannot say that the trial court acted arbitrarily in denying mother's Motion to Modify Custody. Hence, the trial court did not abuse its discretion. Accordingly, we overrule mother's assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.
[1] The record does not contain a transcript of the oral agreement. However, the parties do not dispute that the trial court restated the terms of said oral agreement within its Final Entry in Divorce.
[2] Mother failed to state an assignment of error in her brief, contrary to the requirements of App.R. 16. However, in the interest of justice, we consider her arguments.