OPINION
Petitioner-appellant, Gregory T. Wyatt ("Wyatt"), appeals an order of the Butler County Court of Common Pleas granting residential parent status to petitioner-appellee, Kelly A. Wyatt nka Steele ("Steele"), with regard to the parties' minor child, Zachary Wyatt.
The parties' marriage was terminated by a decree of dissolution filed on September 12, 1995. That same day, the trial court adopted the parties' shared parenting plan ("SPP"). The SPP provided that Zachary would be with Wyatt on Mondays and Tuesdays, with Steele on Wednesdays and Thursdays, and the parties would alternate weekends. The SPP also provided that "each party acknowledges that the other shall be deemed the residential parent when the child is in their [sic] possession[,]" and that "[f]or the purpose of determining school district, the residence of the mother shall be the legal residence of the child." Because of the fifty/ fifty custodial arrangement, the parties agreed that no child support would be paid from one to the other.
At the time of the dissolution of their marriage, both parties resided in Fairfield, Butler County. In August 1996, Steele remarried but remained in Fairfield at Wyatt's request so that their son would have only minimal changes in his life. In December 1996, Wyatt remarried and moved to Batavia, Clermont County. Wyatt testified he moved to Batavia because it was his new wife's home town. Steele and her husband moved to Middletown, Butler County in February 1999 to buy a house and shorten her new husband's work commute to Dayton.
On December 23, 1998, Steele moved to modify the SPP to give her physical custody of the child during the school year. Steele also sought child support. On January 29, 1999, Wyatt moved to terminate the SPP and to grant him physical custody of the child. Wyatt's motion was later restated as a counter-motion to modify the SPP to give him physical custody of the child during the school year.
By decision filed July 29, 1999, a magistrate denied Wyatt's motion and granted Steele's motion. The decision noted that
 The parties agree the present shared parenting plan is not practical, nor in the best interest of Zachary once he attends school because of the distance between the homes (Middletown and Batavia).
 Neither parent claims the other is unfit or incapable of providing good care and a good loving home for their son. The parties have worked very well together in the intervening years. It is of note that in the original agreement made by the parties Mrs. Steele was named residential parent for school purposes. There are no restrictions on Mrs. Steele; she was not required to remain or live in the Fairfield School District. Mr. Wyatt's counsel argues it was Mrs. Steele's "fault" that Mr. Wyatt will no longer be able to share fifty percent of the time because she moved to Middletown. A best interest determination is not solely based on one parent's decision to move which makes the physical arrangements more difficult, but rather the totality of the best interest standards under [R.C.] 3109.04(F)(1).
 Upon considering the factors set forth in R.C. 3109.04(F)(1) and reiterating that both parents were "caring, confident individuals who provide a safe, secure and loving environment for their son[,]" the magistrate modified the SPP and granted Steele residential parent status during the school year. The magistrate recommended that the parties alternate weeks during the summer months and weekends throughout the year. The magistrate also granted child support to Steele. The magistrate specifically stated that "[i]f counsel cannot agree on a child support figure which shall be effective September 1, 1999, the matter is to be set for further hearing."
Wyatt filed objections to the magistrate's decision. By decision filed January 4, 2000, the trial court overruled Wyatt's objections and affirmed the magistrate's decision. Wyatt appeals the trial court's decision and raises two assignments of error.
 Assignment of Error No. 1: THE TRIAL COURT ERRED TO THE PREJUDICE OF [WYATT] IN RULING IT WOULD NOT BE IN THE BEST INTEREST OF THE MINOR CHILD FOR THE PARTIES' SHARED PARENTING PLAN TO BE MODIFIED TO MAKE [WYATT] THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES.
 In this assignment of error, Wyatt essentially argues that the SPP should have been modified in his favor. In support of his argument, Wyatt first contends that the trial court improperly ignored "uncontroverted evidence about community crime statistics and school evaluations" which clearly showed that Batavia was a safer and better community than Middletown. Wyatt also contends that in light of his compliance with the SPP, it is patently unfair to give physical custody of Zachary to Steele during the school year when Steele's "selfish decision" to relocate to Middletown was the sole reason the SPP became impractical. Finally, Wyatt contends that the trial court improperly relied on the parties' SPP in its decision to give custody of Zachary to Steele during the school year.
It is well-established that a trial court has broad discretion in custody proceedings. See Davis v. Flickinger (1997), 77 Ohio St.3d 415
. The trial court's judgment will not be reversed on appeal absent an abuse of discretion. Id. at paragraph one of the syllabus. Because "custody issues are some of the most difficult and agonizing decisions a trial judge must make[,] * * * a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion." Id. at 418. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
R.C. 3109.04(E)(1)(a) governs the modification of a previous order allocating parental rights and responsibilities and states:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of the children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, * * * or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by * * * the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) * * * [B]oth parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of * * * both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
 Thus, the trial court may modify a previous allocation of parental rights and responsibilities only if it finds that (1) there has been a change of circumstances, (2) a modification is in the best interest of the child, and (3) R.C. 3109.04(E)(1)(a)(i), (ii), or (iii) applies. The clear intent of the statute is "to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent thought he or she could provide the children a `better' environment." Wyss v. Wyss (1982), 3 Ohio App.3d 412, 416. In determining whether the modification of a shared parenting decree is in the best interest of the child, the trial court must consider all relevant factors, including those set forth in R.C. 3109.04(F)(1).[1]
Wyatt is not disputing that there was a change of circumstances following each party's relocation to another city. We thus need not address this threshold finding. Rather, Wyatt challenges the trial court's finding that granting custody of Zachary to Steele during the school year was in Zachary's best interest.
Before we address Wyatt's argument, we note we are perplexed by Wyatt's contention that the trial court improperly relied on the parties' SPP in designating Steele as the residential parent during the school year. Wyatt made the same argument to the trial court in his objections to the magistrate's decision. The trial court rejected Wyatt's argument as being "incomprehensible" and aptly stated that "[t]he Court must review the previous Shared Parenting Plan in order to determine whether or not a modification of the parenting plan is in the best interest of the child." We agree with the trial court. In light of R.C. 3109.04(E)(1)(a), which states that "[t]he court shall not modify a prior decree * * *," and the fact that Wyatt filed a motion to modify the SPP, the prior and only custody decree, we find that the trial court properly relied, as it should have, on the SPP. (Emphasis added.)
In her decision granting physical custody of Zachary to Steele during the school year, the magistrate found (1) that Zachary had equal interaction and good relationship with both parents and stepparents, (2) that Zachary was equally well adjusted to his home and community, (3) that the parents were of good sound, mental and physical health, (4) that they had worked well together and always arranged visitation in the best interest of Zachary, and (5) that they both resided in safe, clean neighborhoods.
Upon thoroughly reviewing the record, we find it amply supports the magistrate's decision as affirmed by the trial court. Both parties were described as caring parents who love and deeply care for Zachary. Both parties were also described as capable of caring for Zachary. Steele testified that Wyatt was a good father and that she was satisfied with his parenting of Zachary. Wyatt, in turn, testified that Steele was a very good mother to Zachary, who was safe when he was with her.
Wyatt nevertheless argues that Zachary's best interest would be better served by living with him in Batavia, a community allegedly safer and better than Middletown. Wyatt also argues that Steele did not put Zachary's best interest first when she relocated to Middletown.
With regard to Steele's relocation to Middletown, we find that it did not single-handedly render the SPP impractical but merely exacerbated the situation. Unlike Wyatt, who not only moved to a different city but also to a different county, Steele remained in Butler County but moved to Middletown. The record clearly shows that each party moved to different cities because of their current spouses.
With regard to Wyatt's argument that Zachary would be in a better environment if he lived with him, it is well-established that custody of a child will not be changed merely on a showing by the nonresidential parent that he can provide a better environment than the residential parent. See Wyss, 3 Ohio App.3d 412. We find that the presumption in R.C. 3109.04(E)(1)(a) that the trial court retain the residential parent designated by the prior shared parenting decree (here, Steele) will not be rebutted merely on a showing that the nonresidential parent can provide a better environment. Granting a change of custody solely upon those grounds would foster rather than prevent a constant relitigation of the issues already determined by the trial court in its prior custody decree. See Clyborn v. Clyborn (1994), 93 Ohio App.3d 192.
The record shows that both parties are very involved in several activities, sports and otherwise, with Zachary, and that they both deeply care about his education. Heather Petri, the director of a day care facility that Zachary attended for several years, testified that both parties were wonderful parents who cared very much for their son. Petri testified that Steele was present at several activities, such as field trips, and "always attend[ed] faithfully" to sending in required items. Wyatt, by contrast, never went on field trips and only attended a Christmas party and a graduation ceremony.
Steele testified that she has been responsible for making all of Zachary's doctor's appointments and taking him to most of those. Steele also testified she was the one keeping Zachary's health and immunization records. Both parties testified that when Zachary was sick or a parent had to take off work for a school-related reason, Steele was most often the one to miss work. Both parties agreed that Steele's job was more flexible than Wyatt's and that it gave her the opportunity to leave work at any time if needed.
Because he was concerned about the crime rates and the educational opportunities in Middletown, Wyatt did some research which led him to conclude that Batavia was a safer and better community. It is of note that his research did not compare the cities of Batavia and Middletown but rather the city of Middletown and West Clermont County. Wyatt admitted he did not do any research until after both parties had filed their motion to modify the SPP because Wyatt simply assumed Zachary would go to Fairfield schools. Steele testified that while she did not consider crime statistics before moving to Middletown, she looked at school statistics. Steele testified she had always intended to send Zachary to a private school.
When balancing all the relevant factors needed to determine whether it was in Zachary's best interest to modify the SPP in favor of Steele, we cannot conclude that the trial court failed to consider any pertinent factor. The trial court reviewed each party's strengths and weaknesses as a parent and concluded that it was in Zachary's best interest to modify the SPP to give residential parent status to Steele during the school year. We find no abuse of discretion in the trial court's decision granting physical custody of Zachary to Steele during the school year. Wyatt's first assignment of error is overruled.
 Assignment of Error No. 2: THE TRIAL COURT ERRED TO THE PREJUDICE OF [WYATT] IN SETTING THE AMOUNT AND EFFCTIVE DATE OF HIS CHILD SUPPORT OBLIGATION.
 In this assignment of error, Wyatt argues it was error for the trial court to fail to adjust his child support obligation. Wyatt contends a downward deviation is necessary to reflect Steele's "grossly disproportionate" child care expenses and the fact that the time he spends with Zachary under the new custody decree is greater than the standard schedule (thirty percent instead of twenty percent). Wyatt also argues the trial court erred by setting September 1, 1999 as the effective date for child support.
It is well-established that a trial court's award of child support will not be disturbed on appeal absent an abuse of discretion. Booth v.Booth (1989), 44 Ohio St.3d 142, 144. Similarly, absent an abuse of discretion, an appellate court will not reverse a trial court's decision whether or not to deviate from the child support guidelines. Nienaberv. Hestand (May 17, 1999), Clermont App. No. CA98-12-118, at 4, unreported.
A trial court is required to follow the procedures set out under R.C.3113.215 when calculating child support, including under a shared parenting decree. See Rock v. Cabral (1993), 67 Ohio St.3d 108, 110; R.C. 3109.04(A)(2). R.C. 3113.215(B)(1) mandates that the trial court determine the amount of child support by using the child support guidelines and the appropriate worksheet included in the statute. The amount of child support from the appropriate worksheet "is rebuttably presumed to be the correct amount of child support due." R.C.3113.215(B)(1).
R.C. 3113.215(B)(1)(a) and (b) grant the trial court discretion to deviate from the child support amount shown in the worksheet. The trial court may only make such deviation, however, if it determines that such amount would be unjust or inappropriate, and not in the best interest of the child. R.C. 3113.215(B)(1)(a), (b). In addition, "[a]ny court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." Marker v.Grimm (1992), 65 Ohio St.3d 139, paragraph three of the syllabus; R.C.3113.215(B)(1)(b).
In the case at bar, the trial court modified the parties' SPP to grant physical custody of Zachary to Steele during the school year. R.C.3113.215(B)(6)(a), which specifically governs shared parenting agreements, provides that the trial court may deviate from the amount of child support if the amount from the appropriate worksheet "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents * * *." The term "extraordinary circumstances of the parents" includes:
 (i) The amount of time that the children spend with each parent;
 (ii) The ability of each parent to maintain adequate housing for the children;
 (iii) Each parent's expenses, including, but not limited to, child care expenses, school tuition, medical expenses, and dental expenses.
 Upon reviewing the record, we find that the trial court did not err by not adjusting Wyatt's child support obligation. R.C. 3115.215 unequivocally shows that with regard to child support awards and deviation from such awards, the primary and paramount consideration is the best interest of the child. Wyatt contends a deviation is necessary to reflect Steele's "grossly disproportionate" child care expenses. However, aside from the above conclusory statement, Wyatt has introduced no evidence that Steele's child care expenses were excessive or unreasonable. In denying Wyatt's objections to the magistrate's decision, the trial court stated that "[p]eople make child care arrangements the best they can, what they have to pay in order to do whatever they have to do, I'm not gonna [sic] intercede in that." Steele's child-care expenses are clearly a necessary element of child support. In light of the Ohio Supreme Court's decision which noted the high costs of child care, see Bobo v. Jewell (1988), 38 Ohio St.3d 330, we find no abuse of discretion in the trial court's failure to adjust Wyatt's child support obligation because of Steele's child care expenses.
Wyatt also contends that a deviation is necessary to reflect the fact he spends more time with his son under the new custody decree than he would under the standard schedule. In Critzer v. Critzer (Oct. 23, 1995), Butler App. No. CA95-03-043, unreported, we stated that:
 while a trial court may take into account the amount of time the children spend with each parent under a shared parenting plan as one factor among the many listed in R.C. 3113.215 supporting deviation, it should not automatically reduce child support by the amount of time the children spend with the obligor parent in every case. * * * The determination whether to deviate from the amount mandated by the statutory worksheet should be made only after consideration of the facts and circumstances of each particular case.
 Id. at 5, fn. 2. We find no abuse of discretion in the trial court's failure to adjust Wyatt's child support obligation where Wyatt spends only ten percent more time with Zachary than he would under a standard schedule and where the primary consideration for the trial court is the child's best interest.
Finally, Wyatt contends that the trial court erred by setting the effective date of his child support obligation to September 1, 1999. The magistrate's decision reads "[i]f counsel cannot agree on a child support figure which shall be effective September 1, 1999, the matter is to be set for further hearing." Wyatt contends that the lack of a comma following "child support figure" clearly shows that the child support order was not effective September 1, 1999, but rather was conditioned upon the "if counsel cannot agree" language preceding it. We disagree.
It is axiomatic that the issue could have been prevented by the exercise of greater care in the drafting of the magistrate's decision, and more specifically, by the insertion of a comma after "figure." Although commenting on the importance of punctuation in the interpretation of statutes, the Supreme Court of Ohio aptly stated inWeiss v. Porterfield (1971), 27 Ohio St.2d 117, that:
 The placement of a comma is not necessarily indicative of legislative intent. * * *
 In the interpretation of statutes, the punctuation thereof is not seriously regarded. It is a minor, and not a decisive or controlling, element in the interpretation of a statute. Indeed, punctuation is generally regarded as a fallible standard of the meaning of a statute, and the last resort as an aid in its interpretation. Where the true meaning of the legislature is manifest, the courts will not permit punctuation to control, but will disregard the punctuation of a statute or repunctuate, if need be, to give effect to what otherwise appears to be its true meaning.
 Id. at 120.
We find that the supreme court's foregoing statements are applicable in the case at bar. The primary purpose of child support is to protect the best interest of the children, the intended beneficiaries. Rock,67 Ohio St.3d at 111. To read the disputed child support provision as argued by Wyatt would postpone the starting date of child support payment to an undetermined date in the future. This would be in direct contradiction with the very purpose of the child support statute. We therefore choose to read the provision as if a comma had been inserted after the word "figure" and find no abuse of discretion in the trial court's decision setting the effective date of child support as September 1, 1999. Wyatt's second assignment of error is overruled.
POWELL, P.J., and YOUNG, J., concur.
 _____________ WALSH, J.
[1] R.C. 3109.04(F)(1) provides that in determining the best interest of a child on a modification of a custody decree, the trial court must consider the following factors:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation * * *;
 (g) Whether either parent has failed to make all child support payments * * * that are required of that parent pursuant to a child support order * * *;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 (i) Whether * * * one of the parents subject to a shared parenting decree has continually and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established * * * or is planning to establish a residence outside this state.