OPINION
This is an appeal from a decision of the Court of Common Pleas of Tuscarawas County which modified the designation of residential parent from appellant to appellee, along with certain other related orders.
 ASSIGNMENTS OF ERROR I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ORDERED THAT APPELLANT'S MOTION TO ESTABLISH CHILD SUPPORT AND RELOCATION OF THE MINOR CHILD SHALL BE DENIED.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY MODIFYING CUSTODY OF A CHILD BY CHANGING THE RESIDENTIAL PARENT FROM THE MOTHER TO THE FATHER WHERE THE ONLY EVIDENCE SUPPORTING ITS CONCLUSION WAS THE FILING OF A NOTICE TO REMOVE THE CHILD FROM TUSCARAWAS COUNTY, OHIO, TO DAYTON, OHIO.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO SUSTAIN APPELLANT'S MOTION FOR STAY.
 IV. THE APPELLEE FILED SUPPLEMENTAL OBJECTIONS TO THE MAGISTRATE'S DECISION AFTER THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD WITHOUT OBTAINING LEAVE OF THE COURT TO FILE THE SAME.
 STATEMENT OF THE FACTS AND CASE
The history of this case is that, one child was born of the relationship and marriage of the parties, Ciera Benedetto. (D.O.B. 01/25/96).
The shared parenting agreement of the parties was approved by the court with appellant designated as residential parent in the decree of dissolution of March 13, 1998.
Such agreement, as included in the court order, did not establish monetary child support as appellee was attending Kent State University. He subsequently received both bachelor's and masters degrees and became employed with Oriana House in Summit County and subsequently with the Department of Job and Family Services of Tuscarawas County.
Appellee was, until these proceedings were commenced, granted considerable visitation in addition to that provided by the dissolution agreement.
Appellant filed a notice of intention to move from Tuscarawas County to Dayton, Ohio along with a motion to establish child support. Appellee then moved for a change in the residential parent status.
An evidentiary hearing was held before a magistrate who ruled in favor of appellant, maintaining her as residential parent and ordering child support.
Objections to such decision were filed and the court reversed the magistrate's decision, changed the residential parent's status to appellee and denied the child support motion and relocation request. It also denied a motion for stay of the residential parent modification.
 I., II.
We shall address that portion of the First Assignment of Error relating to relocation of the minor child together with the Second Assignment of Error as they are interrelated.
 In regard to the First Assignment of Error, R.C. § 3109.04(E)(1)(a)(i)(ii) and (iii) provides:
* * *
 (E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
* * *
Further, R.C. § 3109.04(F) states:
 (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 (2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code and all of the following factors:
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnaping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
 (3) When allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition.
The Ohio Supreme Court, in addressing the difficult problems obviously inherent in designating the appropriate residential parent and the "best interests" of the child has provided certain guidelines for an Appellate Court to consider in reviewing decisions such as the case sub judice inDavis v. Flickinger (1997), 77 Ohio St.3d 415.
Among the pertinent conclusions drawn are:
* * *
 Statute governing modification of decrees allocating parental rights and responsibilities, while requiring that change in circumstances justifying change of custody be change of substance and not slight or inconsequential, does not require "substantial" change in circumstances; word "substantial" does not appear in statute, and intent of statute is to spare children from constant tug of war between their parents and provide stability to custodial status of children. R.C. § 3109.04.
* * *
 In determining whether change of circumstances has occurred so as to warrant change in custody initially established by decree allocating parental rights and responsibilities, trial judge, as trier of fact, must have wide latitude in considering all issues and evidence before him or her which support such change. R.C. § 3109.04.
* * *
 Determination of trial judge as to whether "change of circumstances" warranting change in custody has occurred should not be disturbed on appeal absent abuse of discretion. R.C. § 3109.04.
* * *
 Award of custody supported by substantial amount of credible and competent evidence will not be reversed on appeal as being against weight of evidence; finding of error in law is legitimate ground for reversal, but difference of opinion on credibility of witnesses and evidence is not.
* * *
In reliance on Wyss v. Wyss (1982), 3 Ohio App.3d 412 the Supreme Court quoted the following conclusions:
* * *
 "The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment."
* * *
The standard of abuse of discretion applicable to this Court is that in order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279 and applied to custody cases in Bechtol v. Bechtol (1990), 49 Ohio St.3d 21.
Also, Trickey v. Trickey (1952), held:
* * *
 "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (Trickey v. Trickey
[1952], 158 Ohio St. 9.
* * *
The Supreme Court in Davis v. Flickinger also recalled its language ofSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77 in explaining the basis for this abuse of discretion standard and stated:
* * *
 The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.
* * *
 The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.
* * *
 The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.
 This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well.
* * *
In reviewing the trial court's decision we find the same to be inconsistent and lacking in a determination as to the change in circumstances which has occurred.
The trial court correctly determined that several changes in residences of the appellant had occurred subsequent to the dissolution. However, only limited monetary support was being received from appellee.
The trial court also determined in its findings at paragraph 26 that the child sometimes arrived at appellee's residence lacking in cleanliness.
However, appellee admitted that he considered himself to be "kind of obsessive compulsive about being clean". (T. at p. 103).
Countering these findings the record is clear and the trial court so found (paragraph 20 of the Findings of Fact) that each party believes the other to be a good parent.
Also, both the trial court's findings and the record clearly show that the child is well adjusted.
The essential determination of the trial court which resulted in a vacation of the magistrate's decision and change of the residential parent status is based upon the following conclusion as to a change in circumstances:
* * *
 Mr. Benedetto has established by sufficient evidence that a change of circumstances has occurred and the best interests of the child justify a change of residential parent. The evidence clearly shows that the child is well-settled in Tuscarawas County, including her relationship to her extended family (both maternal and paternal) as well as to her preschool. In addition, the evidence shows that the Defendant will continue to provide a stable environment in Tuscarawas County for the child.
* * *
Examining such determination in light of the testimony and keeping in mind the fact that the trial Judge was limited in considering the credibility of the witnesses since it was acting as a reviewing court of only the transcript (see Davis v. Flickinger, p. 5 heretofore), we must ask as to what change in circumstances occurred subsequent to the decree of dissolution other than the contemplated move to Dayton, which was not a stated basis for the court's conclusion.
Prior to the dissolution order, the child continually spent considerable time with appellee's family and extended family.
The transcript indicates:
* * *
 Q. Well, would she often stay at her Grandma Benedetto, Marcy Benedetto's house on Tuesday night?
 A. If she wanted to. Not always, not until recently so she could be with her dad. So, for about three years, I would take her every Wednesday night. And sometimes she would stay Friday nights if he didn't come home until Saturday so I mean —
* * *
(T. at p. 38, lines 17-23).
* * *
 Q. How about Mrs. Benedetto, Josephine Benedetto, her great grandmother?
A. Yeah, she knows them all. She's close.
 Q. Now, when you were married to Ryan, was it their regular family practice to have get together [SIC] with the entire family?
A. On the weekends, yes.
Q. Every weekend?
A. Yes.
Q. They go down to Josephine Benedetto's for dinner?
A. Au-hau.
 Q. And how many people would generally be there every Sunday for those gatherings?
 A. On my goodness, I don't know, the family keeps growing. Gosh, you couldn't fit most of the people around one table.
* * *
(T. at p. 39, lines 6-18).
* * *
Q. How often does she see those cousins?
 A. She sees them a lot. Being married into an Italian family, it's a large family, we get together a lot. Sunday, it used to be every Thursday and Sunday we had spaghetti dinner. Any occasion as far as not just holidays, birthdays, I mean, it's a large family so there's numerous birthdays, celebrations, anniversaries, get togethers, cookouts, anything. I mean, she was always involved at a very large gathering.
* * *
(T. at p. 79. Lines 11-17).
Such finding is insufficient to constitute a change in circumstances which has occurred subsequent to the decree of dissolution as required by R.C. § 3109.04(E)(1)(a).
As stated in Wyss v. Wyss (1982), 3 Ohio App.3d 412, even though the non-custodial parent may be able to provide a better environment, this alone is insufficient as a basis for change.
In reviewing the transcript, the only changes which took place subsequent to the dissolution decree are that appellant moved several times without objection being raised by appellee, who considered her a good parent, and her intended move to Dayton.
The latter produced the requested motion to change the residential parent to appellee.
We must conclude that the evidence in the transcript does not support a finding that a change in circumstances has occurred subsequent to the dissolution decree which warranted a change in the residential parent status as agreed to by appellee and therefore the requirement of R.C. § 3109.04(E)(1)(a) has not been met and an abuse of discretion has occurred.
The First and Second Assignments of Error are sustained as to the change of residential parent to appellee and the non-determination of child support.
Because of this ruling it is unnecessary to address the Third and Fourth Assignments of Error.
This cause if reversed and remanded for a determination of child support in accordance with this decision.
By: BOGGINS, J. WISE, P.J. concur EDWARDS, J. dissents.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the decision of the Tuscarawas County Common Pleas Court is reversed. Costs to appellee.