DECISION AND JUDGMENT ENTRY
{¶ 1} Karen M. Silverman (NKA Karen M. Davis) appeals from a judgment that changed the designation of residential parent from her to her former husband, Glenn Silverman. Initially, she contends the trial court incorrectly determined that a change of circumstances had occurred subsequent to her designation as residential parent. Because the record contains some evidence that supports the trial court's finding, we reject this contention. Next, she contends the trial court erred in finding that a change in the residential parent status was in the children's best interest. The trial court has broad discretion in determining the best interest of the children. Since the record contains a rational basis for the trial court's decision, we hold that the court did not abuse its discretion.
 {¶ 2} The Silvermans were married in Pennsylvania in 1994. Prior to their marriage they had their first child, Samantha. Shortly after the marriage, Mr. Silverman joined the Army and was stationed at Fort Polk, Louisiana. The family lived together in Louisiana and a second child, Cassandra, was born in December of 1995. In May or June of 1996, Mr. Silverman left on military assignment for Korea. His daughters were approximately two and one-half years old and nine months old, respectively. While Mr. Silverman was in Korea, he and his wife entered into a separation agreement, which provided for joint custody of their children. It also provided that Mrs. Davis was to "retain physical custody of the child [sic] for the duration of the husband's military service in the Republic of Korea." In February or March of 1997, Mrs. Davis moved back to Pennsylvania. Subsequently, the parties agreed to a divorce in Pennsylvania. That decree apparently incorporated the terms of the Louisiana separation agreement, thereby continuing Mrs. Davis' right to physical custody of the children but retaining joint custody or shared parenting status. When Mr. Silverman returned from Korea, he was stationed in Maryland, about 150 miles from his former wife and children. He saw the girls once or twice a month, but did not exercise extended summer visitation. By the time Mr. Silverman got out of the service in August of 1999, Mrs. Davis had moved to Ohio with her husband Brian Davis. In addition to the Silverman children, the Davises had a son and a daughter of their own. Meanwhile, Mr. Silverman and his new wife moved to North Carolina and began exercising summer visitation in 2000. Because of the distance involved, he did not exercise weekend visitation.
 {¶ 3} The problems that gave rise to these proceedings began in October of 2001. In October, Mr. Silverman came to Ohio to visit the children and found their home to be cluttered and in need of repair. He also observed dog feces in several rooms, including the kitchen, dining area, and bedroom. When Mr. Silverman and his wife returned to pick up the girls for Thanksgiving, they found the conditions were the same, if not worse. Upon arriving back home in North Carolina, Mr. Silverman discovered head lice in the girls' hair. He attempted to involve the North Carolina "Children Services," but they declined to get involved for lack of jurisdiction. He then called the Fairfield County, Ohio "Children Services" and reported the situation. He also complained that the children were not receiving adequate dental care. Ultimately, he filed a motion for Reallocation of Parental Rights and Responsibilities after the divorce case was certified to the court in Hocking County, Ohio where Mrs. Davis and her family had moved. After the trial court adopted the magistrate's decision, which re-designated residential parent status to Mr. Silverman, Mrs. Davis filed this appeal and assigns two errors: "FIRST ASSIGNMENT OF ERROR — The trial court erred by finding that a change of circumstances had occurred. SECOND ASSIGNMENT OF ERROR
— The trial court erred by finding that it is in the best interests of the children to change residential parents."
 {¶ 4} Both of Mrs. Davis' assignments of error challenge the trial court's decision to modify the shared parenting plan and name Mr. Silverman residential parent for school purposes. Therefore, we will address them together.
 {¶ 5} A trial court's decision to grant a modification of custody is reviewed with the utmost deference. Davis v. Flickinger,77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159; Miller v. Miller
(1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Consequently, we can only sustain a challenge to a trial court's decision to modify custody upon a finding that the trial court abused its discretion. Davis, supra. When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. Above all, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use its observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Moreover, deferential review in a child custody case is crucial since there may be much evident in the parties' demeanor and attitude that does not translate to the record well. Davis,77 Ohio St.3d at 419.
 {¶ 6} R.C. 3109.04(E)(1)(a) governs the modification of a decree allocating parental rights and responsibilities and states: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: * * * The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 7} Thus, a trial court may modify an allocation of parental rights and responsibilities if the court finds: (1) that a change in circumstances has occurred since the last decree; (2) that modification is necessary to serve the best interest of the child; and (3) the harm likely to be caused by the modification is outweighed by the advantages of modification. Stover v. Plumley (1996), 113 Ohio App.3d 839, 842,682 N.E.2d 683.
 {¶ 8} A change in circumstances is a threshold requirement intended to provide some stability to the custodial status of the child.Davis, 77 Ohio St.3d at 417, citing Wyss v. Wyss (1982), 3 Ohio App.3d 412,416, 445 N.E.2d 1153. However, the Ohio Supreme Court in Davis emphasized that appellate courts "must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it necessary for the best interest of the child." Thus, we are required to afford a trial court's decision regarding a change of circumstances the utmost discretion. But a trial court is limited to the extent that a change in circumstances cannot be based on a slight or inconsequential change; it must be one of substance. Davis, 77 Ohio St.3d at 418.
 {¶ 9} After finding that a change of circumstances exists, the trial court next must consider whether the modification would serve the child's best interest. Wangugi v. Wangugi (Apr. 12, 2000), Ross App. No. 99CA2531. R.C. 3109.04(F)(1) specifies the factors that a trial court should consider when determining a child's best interest: "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25
of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 10} We find that the record contains a rational basis to support the trial court's decision to modify residential parent status. Thus, we cannot find that the trial court abused its discretion.
 {¶ 11} The trial court determined that a change of circumstances had occurred since the separation agreement named Mrs. Davis residential parent. The court found that Mrs. Davis had moved four times since 1999, resulting in the children changing schools three times. The court indicated that the children's step-father had disciplined them with a belt on a prior occasion and had testified that he would do so again if he felt justified. The court also found that the children had severe dental problems and that Mrs. Davis had not provided the dental care the children required. In addition, the court found that the children had episodes of head lice, although the court disagreed with the magistrate's finding, which described the episodes as "numerous." Finally, while the magistrate indicated that the children's living conditions had been chaotic and, at times, unsanitary, the trial court noted that Mrs. Davis' current home is quite suitable "except for the fact that as many as 3 packs of cigarettes a day were being smoked around the children."
 {¶ 12} Prior to considering whether the evidence supports the court's finding of a change of circumstances, we must address an argument advanced by Mrs. Davis. Mrs. Davis correctly notes that the magistrate sustained an objection prohibiting Mr. Silverman from testifying about statements his dentist made about the girls' dental problems. Mrs. Davis contends the magistrate, and ultimately the court, relied on this excluded evidence in making its finding that the children suffered severe dental problems. We disagree.
 {¶ 13} Mrs. Davis, herself, testified that her dentist, Dr. Baker, explained to her that the children needed extensive dental work done. Moreover, Mr. Silverman testified that Samantha had to have two root canals, three fillings, and one extraction, and Cassandra had to have two root canals and four fillings. He also testified about the cost of the children's dental work. This evidence independently supports the court's finding that the children had severe dental problems. There is no indication that the court relied on the excluded testimony in reaching its decision.
 {¶ 14} Having reviewed the record, we conclude the evidence supports the trial courts finding that a change of circumstances had occurred. While the record indicates that Mrs. Davis has only moved three times since 1999[1], it does support the court's finding that the children have attended three different schools in a three-year period. In addition, it is undisputed that the children suffered severe dental problems requiring extensive dental treatment. According to Mrs. Davis' testimony, she had only taken the children to the dentist once or twice although Samantha and Cassandra were eight and six years old, respectively. Moreover, the court correctly concluded that the record does not indicate that the children had "numerous" episodes of head lice. However, the record does indicate that the children had a history of head lice. According to Mrs. Davis, Samantha had head lice twice and Cassandra had head lice "quite a few times." Thus, the record supports the trial court's finding that a change of circumstances had occurred since the separation agreement named Mrs. Davis residential parent.
 {¶ 15} The trial court also found that modifying residential parent status from Mrs. Davis to Mr. Silverman was in the children's best interest. The court indicated that the children were comfortable in both homes and were equally adjusted to both homes and communities. Moreover, the court noted that Samantha did not state a preference regarding where she wanted to live. With regard to Cassandra, the court indicated that it was unclear whether Cassandra had sufficient reasoning ability to express her wishes and concerns. The court also found that both parents were likely to facilitate companionship with the other parent. The court concluded that Mr. Silverman was more likely to provide a stable environment for the children. The court indicated that Mr. Silverman was more likely to use reasonable discipline with the children. In addition, the court indicated that Mr. Silverman had proven himself to be "more motivated to meet the educational and particularly medical needs of the children."
 {¶ 16} Mrs. Davis contends the court, in violation of R.C.3109.04(F)(3), considered the parties' financial status and condition in determining the children's best interest. R.C. 3109.04(F)(3) prohibits a court from giving preference to a parent based on that parent's financial status or condition. There is nothing in the record to indicate that the court considered the parents' financial status in deciding to modify the shared parenting plan and name Mr. Silverman residential parent. While the court's entry does address the parties' economic status, it does so for purposes of child support.
 {¶ 17} The trial court's entry demonstrates a rational basis for its finding that the children's best interest would be served by modifying the shared parenting plan to name Mr. Silverman as the residential parent for school purposes. Thus, we cannot say that the trial court abused its discretion.
 {¶ 18} In summary, the evidence in the record supports the trial court's finding that a change of circumstances has occurred since Mrs. Davis was named residential parent. Moreover, the trial court did not abuse its discretion when it determined that changing residential parent status to Mr. Silverman was in the children's best interest. Accordingly, Mrs. Davis' assignments of error have no merit.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.
[1] It appears that Mrs. Davis has moved four times since the parties divorced in 1998. However, the record indicates that she has only moved three times since 1999.